STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 123-9-13 Vtec |
| Moore 3 Lot Subdivision | DECISION ON THE MERITS |

James and Mia Moore (the Moores) seek to subdivide the 6.27-acre parcel they own at 18 Leap Frog Hollow Road in the City of Montpelier, Vermont. The Moores' subdivision application was approved by the Montpelier Development Review Board (the DRB) by written decision dated August 19, 2013. Neighboring property owner James Nagle (Mr. Nagle) timely appealed that decision to this Court and raised 15 questions for the Court's review.

In a July 28, 2014 decision we addressed the Moores' motion to dismiss and the parties' cross-motions for summary judgment. We **GRANTED** judgment to the Moores on Questions 1–11 and 13–15 of Mr. Nagle's Statement of Questions. As to Question 12, we concluded there was a material dispute of facts regarding whether the Moores' application meets the requirements of the Montpelier Zoning and Subdivision Regulations related to the delineation of environmental resources, and thus we denied summary judgment on Question 12. Finally, we denied Mr. Nagle's request that the application be remanded to the DRB. Thus, Question 12 remained for trial.

The Court completed a site visit to the Property on the morning of December 16, 2014 immediately followed by a merits hearing at the Washington County, Civil Division in Montpelier, Vermont. Appearing at the site visit and merits hearing were James Moore and his attorney Daniel Burke, Esq., and James Nagle, participating as a self-represented litigant.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact.

## Factual Background

1. James and Mia Moore purchased a 6.27-acre parcel of land on Leap Frog Hollow Road in the City of Montpelier in May 2012.

1

2. The 6.27-acre parcel was once part of a larger parcel owned by Mr. Nagle. Mr. Nagle subdivided this larger parcel into three lots; Lot 1 was, and still is owned by Mr. Nagle; Lot 2 was owned by the Moores' predecessor in interest, Dejung Gewissler; and Lot 3 was then, and still is owned by Na An.

3. Mr. Gewissler further subdivided Lot 2 into Lots A and B, with Lot A being 1.04 acres and Lot B being 6.27 acres. Mr. Gewissler conveyed Lot B to the Moores and that is the subject lot they now seek to further subdivide (Project Lands).

4. On June 18, 2013, the Moores submitted an application for a subdivision permit with the City of Montpelier Development Review Board (the DRB). The application is to subdivide Lot B into three lots: a new Lot B of 2.96 acres, Lot B1 of 2.04 acres, and Lot B2 of 1.27 acres. The plans accompanying the application depict general locations of single-family residences, garages, driveways, wells, and water and sewer lines. With respect to this appeal, the Moores did not apply for any development or construction permits other than approval to subdivide their lot.

5. The Site Plan depicts Leap Frog Hollow Road which provides access to the subject parcel.

6. The DRB approved the subdivision application with conditions by written decision dated August 19, 2013.

7. Mr. Nagle timely appealed that decision to this Court.

8. The Project Lands do not contain wetlands; shoreline management areas; rare, threatened or endangered plant and animal species; geological sites; historic sites; scenic roads; bodies of water; flood hazard areas; significant trees; significant wildlife habitats; wellhead protection areas (for public water supplies); or ridge lines.

9. The Site Plan depicting the Project Lands shows a water course as a "stream." The stream and stream bank are or will be crossed by underground utilities. Otherwise, the stream and stream banks are provided with a buffer area.

10. The Project Lands include agricultural soils, but these soils are not prime agricultural soils as they have an agricultural value of 7 out of 12.

11. Project Land soils have a high water table; however, development can take place without adverse impacts.

12. The Project Lands contain limited open spaces as depicted on the Site Plan.

13. There is a View Shed from the Project Lands looking to the southwest across a valley setting.

14. The Project Lands have some areas with slopes of greater than 20 percent. These areas are shown by shading on the Site Plan. The Project Lands can be developed without adverse impacts to the steep slopes.

15. A majority of the Project Lands are south facing slopes.

16. Private well shield areas are shown on the Site Plan.

17. The Project Lands and the surrounding hillside act as an aquifer recharge area. Subdivision and development should not adversely impact aquifer recharge.

### Discussion

Mr. Nagle's Question 12 asks: "Have appellees/applicants accurately represented the streams, watercourses and other natural features on their survey for the proposed development?" This raises the issue of whether the application on appeal complies with the requirements of the City of Montpelier Zoning and Subdivision Regulations (Regulations). The Regulations at Article 4, Subdivision and Planned Development Procedures, establish the approval requirements for subdivisions. Specifically, Table 401 details the submission requirements for subdivisions in three sections of review: Sketch Plan, Preliminary Plan, and Final Plan. Every subdivision application must go through both preliminary and final plan review, but only the sketch plan and preliminary plan must include the following information:

> ENVIRONMENTAL FEATURES INVENTORY: On a plan at the same scale as the base plans, delineate significant natural resources; wetlands, shoreline management areas; water courses; rare, threatened or endangered plant and animal species; geological sites; historic sites; scenic roads; agricultural lands; open spaces; view sheds; streams; bodies of water; woodlands; flood hazard areas; slopes with gradients greater than 20%; south-facing slopes; significant trees; significant wildlife habitats, wellhead protection areas; and ridge lines.

Regulations at Table 401. We therefore read Mr. Nagle's Question 12 to ask whether the Moores have included this delineation, required by Table 401, in the application materials now before this Court.

In considering a subdivision application, the Regulations direct that the DRB, and therefore this Court on appeal, "may consider and impose appropriate conditions and safeguards with respect to the subdivision's or planned development's conformance with the

3

general development standards of Article 7." Regulations § 407.E. Section 715(A) of Article 7 of the Regulations requires consideration of impacts on natural resources. To the extent that the subdivision layout could impact these natural resources, the proper delineation and description of the resources is material to determining whether the application should be approved. Our review on appeal is limited to ensuring that the Table 401 Environmental Features Inventory information is provided in the Moores' application and we do not further consider potential impacts to these features as to do so is beyond the Statement of Questions in this matter. V.R.E.C.P.5(f) ("The appellant may not raise any question on the appeal not presented in the statement as filed.")

The parties provided considerable testimony regarding what streams, watercourses, and other natural features exist on the site and whether the Moores' application accurately delineates those resources. A few examples are as follows:

During his cross examination of the Moores' Professional Engineer, Don Marsh,[1] who developed the Moores' application and site plans, Mr. Nagle elicited testimony that the ANR on-line Natural Resource Atlas identified a wetland advisory area on the Project Lands. Wetlands, however, were not depicted in the Moores' application or on any site plans. Mr. Marsh subsequently credibly testified on re-direct that based upon site visits, there are no wetlands, and more specifically, no hydric soils or plants associated with wetlands, on the Project Lands.

During his examination of Julie Moore, a water resources engineer and environmental consultant, Mr. Nagle elicited testimony that based upon two site visits, Ms. Moore believed there were slopes in excess of 15% on the Project Lands south of the Moores' house location and that these slopes were not shown on the Site Plan. Ms. Moore testified to her professional opinion regarding her concerns of development on slopes of 15% or more. Even if true, these facts would not cause the Site Plan to be non-compliant with Table 401 as this provision of the Regulations only requires showing slopes with gradients greater than 20%.

Mr. Nagle and his witnesses also testified to environmental features located outside of the Project Lands and he asserted that off-site features, such as steep slopes and wetlands,

<hr>

[1] We note that Mr. Nagle had retained Mr. Marsh a few years earlier and used Mr. Marsh for the Nagles' development of their property.

4

should be material to the Moores' application and shown on plans. Again, we find no requirements within the Regulations for depicting off-site environmental features.[2]

## Conclusion

We therefore conclude that the Moores' application on appeal complies with the requirements of the City of Montpelier Zoning and Subdivision regulations related to the delineation of environmental resources. Judgment is **GRANTED** to the Moores on Mr. Nagle's Question 12. As our July 28, 2014 decision **GRANTED** judgment to the Moores on Questions 1–11 and 13–15 of Mr. Nagle's Statement of Questions, this matter is now complete.

We remind the parties that each house site will require additional zoning and building permits, some of which may have been already acquired.

Electronically signed on March 20, 2015 at 04:17 PM pursuant to V.R.E.F. 7(d).

_Tom Walsh_

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

---

[2] Article 7, General Development Standards, of the Regulations applies to subdivisions. Regulations § 701, Purpose and Applicability. Relevant to this appeal, the Moores do not apply for any development or construction permits other than approval to subdivide their lot. Regulations §715.A, titled "Site Protection and Design," requires that any development plans "make appropriate provision for protection of the following items: streams and stream banks, steep slopes, wetlands, soils unsuitable for development, agricultural lands and primary agricultural soils, unique natural and manmade features, significant historic and archaeological sites, wildlife habitat and sensitive environmental features as identified in the Montpelier Municipal Plan, aquifer recharge area and wellheads, and scenic features, including roads and major ridgelines as delineated in the Montpelier Municipal Plan." Regulations § 715.A. These provisions could be at issue during subdivision review. The Regulations require that efforts be made to protect or preserve these areas with buffers while allowing reasonable development of an applicant's property. Id. These issues, however, were not raised by Mr. Nagle within his Statement of Questions. As such, they are outside of our review. We do note, however, that at trial, the Moores provided some conclusory evidence asserting compliance with §715.A, and Mr. Nagle provided no credible evidence that the subdivision failed to comply with § 715.A.